New-London,          PRATT *against* THE STATE OF CONNECTICUT :
July,
1824

IN ERROR.

Pratt
*v.*
State.          The channel of *Connecticut* river between *Lyme* and *Saybrook*, is not within the
patented limits of either of those towns ; *Lyme* being bounded *Westerly*, on
the channel, and *Saybrook Easterly*, on the margin, of that river.

But the jurisdiction of each town, for the service of process and enforcement of
the laws, by virtue of antient, invariable and undisputed usage, extends to
the centre of the river.

This was an information, before the county court of *New-London* county, against *Lester Pratt*, alleging, that on the 9th of *October*, 1823, he made an assault upon *Gilbert T. Smith*, one of the constables of the town of *Lyme*, and resisted him in the execution of his office, while arresting the body of *Pratt*, by virtue of a lawful writ of attachment.

The defendant justified, on the ground, that at the time of the arrest, he was not within the limits or jurisdiction of the town of *Lyme*. He averred, that at that time " he was lawfully and peaceably fishing for and taking oysters, in the public navigable river *Connecticut*, about three miles from its mouth, to the *Southward* of the *Northern* boundaries of *Saybrook* and *Lyme ; Eastward* of the middle of the channel of said river, and in said channel, in about twenty feet water, where the tide flows and reflows, and where said river is navigable, about twenty rods from the *Eastern* shore of said river, and about one hundred rods from the *Western* shore thereof." The several acts, grants and patents, made and issued, by authority of the General Assembly, to *Lyme* and *Saybrook* respectively, were set forth in the plea. In *May*, 1767, the General Assembly ordered, that " the plantation on the *East* side of the river, over against *Saybrook*, should, for the future, be named *Lyme*." In the patent granted to *Lyme*, the 14th of *May*, 1685, the boundaries of that town were thus described : " Upon the sea, on the *South ; Westerly*, on the channel of *Connecticut* river ; *Easterly*, by a ditch, &c. to a marked white-oak tree, by the side of a great swamp ; the *North* bounds are from the said white-oak tree a *West* line till it meet with the *Haddam* bounds, and from thence a *Southerly* line by *Haddam* bounds till it come to their corner tree, it being marked, and having stones about it, a little *Eastward* of the most *Eastwardly* branch of *Eight-mile* river, and from thence a *West* line to *Connecticut* river, and a white-oak tree by the said river side, on the second point of rocks

*New-London*
July,
1824.

Pratt
*v.*
State.

above *Twelve-mile* island, taking in the islands that are adjacent both in the sea and river, the said islands having been, by purchase or otherwise, lawfully obtained of the *Indian* native proprietors." In the patent granted to *Saybrook*, the 26th of *May*, 1685, the boundaries of that town were thus described : " Upon the sea, on the *South* ; and on *Connecticut* river, on the *East ;* on the bounds of *Keneilworth* on the *West ;* and runs from the sea into the wilderness ten miles, and abuts on the bounds of *Haddam*, on the *North ;* and is in breadth, from *Connecticut* river next to *Haddam* bounds, about four miles, and the breadth by the sea, is about six miles." In another patent granted to *Saybrook* the 11th of *May*, 1704, the boundaries of that town are thus described : " On the *East*, or *Easterly*, with the great river of *Connecticut ;* and on the *South*, or *Southerly*, with the sea or sound : and on the *North*, or *Northerly*, with a straight line drawn and running near *West* from a certain oak tree marked, and a mere-stone set by it, standing about four or five rods *West* from the bank of the said river of *Connecticut*, and near *West* from the lower or *Southern* end of *Twenty-mile* island, in the said river, to a heap of flat stones cast up,—the *North-West* corner bound mark being the line between the said town of *Saybrook* and the town of *Haddam ;* and on the *West*, or *Westerly*, with a line," &c. In the grant of the General Assembly, in *May*, 1704, on which the last-mentioned patent was issued, the boundaries of *Saybrook* were described in the same manner, except the word " by" was used in the first clause, instead of the word " with." The plea averred, that the bounds of said towns had ever since remained unaltered ; that *G. T. Smith* took the body of the defendant, at the place above-mentioned, by virtue of a writ of attachment directed to him as constable of the town of *Lyme*, and by no other authority ; and that the defendant resisted, as well he might, which was the resistance in the information complained of.

To this plea, there was a demurrer ; and the court adjudged the plea insufficient, and sentenced the defendant to pay a fine of five dollars and the costs. To obtain a reversal of this judgment, the defendant brought a writ of error in the superior court ; and the questions arising thereon were reserved for the advice of this Court.

*Platts*, for the plaintiff in error.

*Gurley* and *Waite*, for the defendant in error.

New-London,
July,
1824.

Pratt
v.
State.

HOSMER, Ch. J This case presents two questions; first, was the place where the alleged assault was committed, within the chartered limits of *Lyme*; secondly, was it within the jurisdiction of that town, so as to authorise the service of legal process there.

It is too unquestionable to admit of any controversy, that the place of the assault, as alleged, was not within the patents of either *Saybrook* or *Lyme.* The patent of the latter town, granted in 1685, bounded it *Westerly on the channel* of *Connecticut river,* taking in the islands that are adjacent. The patent of *Saybrook,* in the same year, bounds *on Connecticut river, on the East.* In 1704, another patent was issued to the same town, bounding it *East* or *Easterly,* with the great river *Connecticut*; and in the act of the General Assembly, on which the latter patent was issued, the town is bounded on the *East,* or *Easterly, by* the aforesaid river. The words *on, with,* and *by Connecticut river,* in the said patents, in reference to the subject matter, are of the same meaning; and so far as it relates to the boundaries of the above towns, they may be settled in a single sentence; to wit, *Lyme is bounded Westerly on the channel of Connecticut* river; and *Saybrook,* on the *East,* is bounded by the *margin* of the same river. The place of the supposed assault, was *in the channel of the river,* between the two towns, about twenty rods from the *Eastern* shore, and about one hundred rods from the *Western* shore; and, of consequence, it was not within the patented limits of either town.

That it is within the jurisdiction of *Lyme,* so far as relates to the service of process and enforcement of the laws, I cannot entertain a doubt. If it is not, there is no pretence that it is within the town of *Saybrook,* or either of the adjoining counties, which only are commensurate with the towns; and hence, although within the State, it is without the sphere of its laws, and the jurisdiction of its courts. And what is still more extraordinary, for nearly two centuries, it has been permitted, by the legislature, to remain in this condition. The magnitude of the general inconvenience, that must have resulted from this state of things, demonstrates, that it does not exist; and that if it had been considered as existing, a year would not have elapsed without the correction of so monstrous an evil. Upon the supposition that *Connecticut* river is without our towns and counties, there is within the heart of the State a place of secure refuge for debtors and criminals; a sanctuary, to which a man covered with blood, may fly, and be safe; where no one can be

legally arrested; from which no witness can be summoned; a *New-London,* July, 1824.

Pratt
*v.*
State. theatre for the perpetration of murder, and duelling, and every species of iniquity, with the most perfect impunity. These evils, so fearful in prospect, never existed; and, if anticipated, are the mere product of imagination. Our towns adjoining *Connecticut* river, probably from their origin, and certainly beyond the memory of man, have exercised jurisdiction over its waters. In some instances, the charters of towns have passed over the river, and taken the land on each side; the whole river being within the jurisdiction of one town. In other instances, the towns are bounded on the river; and there the town jurisdiction was extended from each town to the centre of the channel.

The jurisdiction of towns upon the river *Connecticut*, has its foundation and authority, in antient, and invariable and undisputed usage; and the constables of *Lyme* have right to serve legal process, at the place of the alleged trespass. The resistance made to the officer, in this case, was a battery; and the judgment of the county court, unexceptionable.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

Judgment to be affirmed.